Rudolph Krohn, Jr., a Minor, by Rudolph Krohn, his Father and Next Friend, Appellee, v. Stanley O'Bara, Appellant.

Gen. No. 45,925.

Opinion filed November 10, 1953. Rehearing denied, December 1, 1953. Released for publication December 1, 1953.

CLAUSEN, HIRSH & MILLER, all of Chicago, for appellant.

SAMUEL E. BUBLICK, and EDWARD WOLFE, both of Chicago, for appellees; EDWARD WOLFE, of Chicago, of counsel.

MR. JUSTICE ROBSON delivered the opinion of the court.

This is an action by the plaintiff, Rudolph Krohn, Jr., a minor, by Rudolph Krohn, his father and next friend, to recover damages from the defendant, Stanley O'Bara, for injuries suffered in an automobile accident. The jury found the defendant guilty and assessed plaintiff's damages in the sum of $10,000. The usual motions were made by the defendant and overruled by the trial court. Defendant appealed.

Grounds assigned for reversal are that the verdict was against the manifest weight of the evidence, that the jury was not properly instructed, and that the refusal of the court to admit certain evidence was error. A decision on these points necessitates a summary of the evidence.

The accident occurred on the afternoon of October 7, 1949, at about 4:30 p. m. at the intersection of Archer and Lockwood avenues in Chicago, Illinois. The weather was clear and the sun shining. Archer avenue is a four-lane highway which runs at an angle in a northeasterly and southwesterly direction, but to simplify the description we will refer to it as an east and west street. Lockwood avenue runs in a northerly and southerly direction and is thirty feet wide. The scene of the accident is a residential and business neighborhood that

is rather closely built up. On the southwest corner is a vacant lot which was grown up with weeds. There is no gutter or curb on the south side of Archer avenue. There is a space between the building line and the beginning of the pavement on the south side of Archer avenue large enough for a sidewalk in front of stores and to permit car-parking between the sidewalk and the pavement. A truck was parked about three car lengths west of the intersection at the time of the accident.

At the time of the accident plaintiff, who was eleven years old, was on an errand for his mother to a store on the north side of Archer avenue. The defendant was on his way home from work in La Grange, Illinois. He was driving his automobile in a northeasterly direction on Archer avenue. There is a sharp variance between plaintiff's version and defendant's version of how the accident occurred.

Plaintiff's version is that he first went to a store at Lorel avenue and 54th street. He could not there get the cream for which his mother had sent him, so he left that store intending to go to another located on the north side of Archer avenue. He walked north on the west side of Lockwood avenue in the direction of Archer avenue which was two blocks away. When he came to the south edge of Archer avenue there was considerable traffic. He stopped for a minute and looked for a clearing. When traffic appeared to be clear he took two steps into the street, looked west and saw a truck coming eastbound on Archer avenue about a half block away. The truck was in the lane nearest the center line. He did not see any automobiles in the outer lane. After seeing the truck he looked to the east to see if any cars were coming and then back to the west. The truck was then about twenty-five feet from him. It was at this time he first saw defendant's automobile coming

fast from behind the truck in the lane of Archer avenue nearest the curb. He tried to get out of the way but was unable to do so before he was struck by defendant's car. He did not hear any horn sounded. Plaintiff remembered nothing after the accident took place.

Defendant's version is that he left his place of employment in La Grange at approximately four o'clock to drive to his home which was about nine miles. When he was about a half mile west of Lockwood avenue he passed a semi-trailer truck and then resumed his place in the inner lane closest to the center of the highway where he had been previously driving. He continued on Archer avenue approaching the intersection with Lockwood at a speed of thirty to thirty-two miles per hour. When he was a block or two west of Lockwood there was no eastbound traffic in front of him on Archer avenue in either lane, nor was there any westbound traffic within that immediate vicinity. The semi-trailer truck, which he had passed, was two blocks behind him. He had reached a point about a car length (seventeen feet) from the west crosswalk of Lockwood avenue and fifty feet from the place of the accident when for the first time he saw the plaintiff who was running fast in a northerly direction on the east sidewalk of Lockwood avenue toward the intersection with Archer avenue. Plaintiff did not look to the west toward the defendant's car. Defendant sounded his horn but the plaintiff kept running straight ahead across Archer avenue. He applied his brakes and turned his car to the left away from the plaintiff in an effort to avoid striking him and in so doing went over the center line of Archer avenue. At the time of the impact defendant's car was in the westbound lane over the center line. After the impact defendant said his car traveled approximately thirty feet; he stopped momentarily and then to avoid obstructing westbound traffic drove his car to the left off

480

the westbound lane of Archer avenue on to the dirt shoulder to the north. This was about fifty-five feet east of the intersection. Defendant did not see any "Slow" signs on the corner at the intersection of Archer and Lockwood avenues.

Two of plaintiff's witnesses testified there were "Slow" signs on Archer avenue just before the intersection with Lockwood at the time of the accident. Pictures taken by plaintiff in October of 1949 show these "Slow" signs.

A police officer testifying for the plaintiff said he talked to the defendant following the accident and that defendant told him that a truck had obscured his vision and as he came by the truck the boy was standing in the street; that he didn't have time to avoid him and didn't see him until he was right up on him. Defendant didn't tell him that the boy was running. The officer then started to write a statement but defendant, when informed of his rights, refused to answer further questions. The defendant admitted conversation with the police officer but denied that he told him the boy was standing in the street or that he had struck him when passing a truck. The police officer denied that there were "Slow" signs at the intersection at the time of the accident.

Another of plaintiff's witnesses who operated a hardware store and was setting up a display in the window at the time of the occurrence did not see the accident but heard noises, looked up, saw the plaintiff lying in the street and defendant's car going along across the street on a slant at a fast rate of speed. It traveled seventy feet before it came to a stop.

Another witness for plaintiff, a barber, saw defendant's car come to a stop across the street from his shop. It was about a hundred feet from where the plaintiff was lying. Plaintiff was lying near the crosswalk in

about the center of the outer traffic lane. He said there were "Slow" signs at the corner.

Defendant attempted to prove by witnesses the posted speed on Archer avenue in the vicinity of the accident on October 7, 1949. The court sustained an objection to this testimony. An offer of proof was made by the defendant that in the vicinity of Archer and Lockwood avenues the posted speed was thirty-five miles per hour.

The first point that we must decide is defendant's contention that the verdict of the jury was not supported by any credible evidence and was contrary to the manifest weight of the evidence. It is true that there were only two occurrence witnesses, the plaintiff and the defendant. An examination, however, of plaintiff's story shows that it was supported by a statement of the police officer who said that defendant told him that the plaintiff was standing in the street; that a truck had obscured his vision and as he came by it he was unable to avoid hitting him. The owner of the hardware store said he saw defendant's car going across the street on a slant and not hesitating or stopping, as defendant claims, when the accident took place. Two of plaintiff's witnesses substantiated the statement that there were "Slow" signs at Lockwood avenue although this was denied by the police officer. Against this we have only the testimony of the defendant. The jury believed plaintiff's version.

██ ██ The trial judge who heard and saw the witnesses approved the verdict by his denial of defendant's motions. When the evidence is contradictory this court will not substitute its judgment for that of the trial court unless the findings are manifestly against the weight of the evidence. *Wynekoop v. Wynekoop,* 407 Ill. 219. We cannot find any such justification based on the evidence in this case.

■ Defendant next contends that where both the question of liability and proximate cause of the injuries are extremely close, it is important that the jury be accurately instructed. *Chevalier v. Chicago Transit Authority,* 338 Ill. App. 119. We have no quarrel with this statement but as the record stands we cannot agree that the question of liability and proximate cause of the injuries were extremely close.

■ Defendant objects to certain instructions that the court gave on behalf of the plaintiff and assigns them as grounds for reversal. The first is that one of plaintiff's instructions directed a verdict and authorized recovery generally without limiting the negligence to that charged in the complaint. If this instruction was to stand alone, plaintiff's contention might merit consideration. *Brussel v. Lilly,* 347 Ill. App. 533; *Both v. Collins,* 339 Ill. App. 437. However, one of defendant's instructions was subject to the same objection. It is a well settled rule of law that a party will not be heard to complain of an alleged error in an instruction when his own instruction is subject to the same complaint. *Commissioners of Lincoln Park v. Schmidt,* 375 Ill. 474, *Weinrob v. Heintz,* 346 Ill. App. 30; *McKinnie v. Lane,* 230 Ill. 544.

We have examined defendant's other objections to the instructions given for plaintiff. They are technical and in no instance did the giving of them constitute reversible error.

■ ■ Defendant contends that the refusal of the court to give "a sudden emergency instruction" tendered by him to cover his version of the case constituted reversible error. This instruction, which is very involved, consists of one sentence of 202 words and reads as follows:

"The court instructs the jury that while the defendant in operating his said automobile in question was

bound to have regard to the rights and safety of others, yet he was not obliged to be all the while on his guard against the not reasonably to be expected, the unusual and extraordinary, and if the jury believe from the evidence, under the instructions of the court, that the plaintiff's suddenly running across the street in front of the defendant's automobile, if he did so run, was, under all the circumstances in evidence, extraordinary, not reasonably to be expected, or unusual, and that as the automobile approached the place in question it was being operated with ordinary care by the defendant, then it became the duty of the defendant to stop his automobile only as soon as he had notice or knowledge of the apparent intention of the plaintiff to do as he did; and if the jury believe from the evidence, under the instructions of the court, that such notice or knowledge came too late for the said defendant in the exercise of ordinary care to stop said automobile without injuring the plaintiff, then the jury must find the defendant not guilty."

Defendant cites no cases upon which it is based. We have said that a jury should be instructed in brief, clear and simple language. This certainly does not meet these standards. *Bales v. Pennsylvania R. Co.,* 347 Ill. App. 466, 476. Further, defendant's own testimony is, in substance, that when he was seventeen feet from Lockwood avenue, which was about fifty feet from where the accident took place, he first saw plaintiff running; that he sounded his horn. He was going at a speed of thirty-two miles per hour. He said he could have stopped his car in forty to fifty feet. He said he applied his brakes, swung his car, but that he was unable to miss the boy. After the accident he traveled about thirty feet, stopped momentarily, and then drove across the street another forty to fifty feet. There is

testimony and exhibits that there were "Slow" signs posted at the intersection of Archer and Lockwood. This is disputed by the defendant. Considering these facts we do not believe that the defendant was entitled to a sudden emergency instruction. He was entitled to an instruction on contributory negligence which the court gave.

Finally, the trial court did not allow defendant to prove the posted speed on Archer avenue in the vicinity of the accident. Defendant contends that this deprived him of an essential part of his case, namely the opportunity to show that he was driving at a permissible rate of speed, a factor which might have weighed favorably toward him in the jury's deliberations.

This evidence should have been admitted but we do not believe that the failure to allow it had any appreciable effect upon the verdict of the jury. The testimony of two of plaintiff's witnesses showed that defendant's car traveled from 75 to 100 feet after plaintiff was hit. One of them said he did not slacken the speed of his car until he came to a stop at the end of this distance. Defendant explains this by saying that he came to a stop momentarily but then felt that he should get out of the westbound traffic lane, and so continued to drive diagonally across the street to the shoulder of the road. There is also the disputed testimony and exhibits, heretofore referred to, that show there were "Slow" signs at the intersection. After considering these factors we conclude that the exclusion of this evidence was not reversible error.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SCHWARTZ, P. J. and TUOHY, J., concur.