June Simpson, Appellee, v. William Marks, Appellant.

Gen. No. 45,802.

Opinion filed March 18, 1953. Released for publication April 6, 1953.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellant.

IRVING G. ZAZOVE, and ISADORE WOLF, both of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court. This is a personal injury action against an automobile owner by his guest. The verdict and judgment

were for plaintiff in the amount of $12,500. Defendant has appealed.

The accident occurred about 3 a. m., August 15, 1947 near 29th Street on the Outer Drive in Chicago. Defendant was driving south with plaintiff at his side. The automobile collided with a lamp post and plaintiff was injured.

The questions on appeal are: whether there was prejudicial error committed at the trial in refusing to grant a new trial for improper examination of a juror, in permitting improper cross-examination and in instructing the jury; and whether the verdict is against the manifest weight of the evidence or excessive.

 Plaintiff had the burden of proving that defendant was guilty of wilful and wanton misconduct causing her injury. (Chap. 95½, par. 58a, Ill. Rev. Stat. [1951; Jones Ill. Stats. Ann. 85.064(1)]). She alleged defendant's duty not to wilfully and wantonly injure her and the violation of that duty in several ways. At the trial, plaintiff's theory of proof was that defendant, just before the accident, took both hands off the wheel to embrace her, and the automobile out of control ran onto the parkway and into the lamp post. The theory of defense was that there had been an accident on the northbound channel of the Outer Drive and as defendant drove south he was distracted by the warning flares and while he was looking east at the accident his automobile went onto the parkway and into the post.

 In this court the defendant argues that the only testimony supporting plaintiff's trial theory should have been rejected by the court and jury as inherently improbable. Plaintiff's brief answers that under either her theory or defendant's theory defendant was guilty as a matter of law. Defendant cannot claim surprise at plaintiff's reliance on defendant's theory since he

introduced it and the complaint was general enough to accommodate either theory. We think that if the record sustains the verdict and judgment on either theory the judgment should be affirmed.

Defendant contends that because plaintiff's testimony is unworthy of belief a verdict based on that testimony can be explained only by the passion engendered in the jury by improprieties at the trial. These improprieties, argues defendant, were the suggestions to the jury of insurance coverage and plaintiff's attorney dwelling on inflammatory irrelevant matter in examining defendant.

█ Defendant cites the following cases in support of his contention that plaintiff's story of the accident is inherently improbable. *Tepper v. Campo,* 398 Ill. 496; *Schueler v. Blomstrand,* 394 Ill. 600; *People v. Bentley,* 357 Ill. 82; *Seybold v. Zimmerman,* 294 Ill. App. 138; *Clements v. Western Fire Ins. Co.,* 264 Ill. App. 473 and *Brown v. Chicago City Ry. Co.,* 155 Ill. App. 434. The courts in these cases stated the rule that uncontradicted testimony should be rejected where it is physically impossible, inherently improbable, or contrary to the common experience of mankind. The cases, however, on the facts, are so plainly distinguishable that we think it would serve no useful purpose to discuss them. In *Seybold v. Zimmerman,* the court refused to apply the rule in defendant's favor.

█ It was not physically impossible for defendant to take his hands off the wheel to embrace plaintiff. We think it is not against the common experience of mankind, nor inherently improbable, for an ardent lover to do what plaintiff said the defendant did in this case. Impassioned men have been guilty of far more reckless conduct than that attributed to defendant.

In examining a prospective juror, plaintiff's attorney was told by the prospective juror that she

worked for an advertising firm. He asked whether "they" had anything to do with law business where people are engaged in "this type of work." She answered, "no." She was asked whether she worked in a law office. She answered, "no." Then, "Have you ever been engaged by any employer that had anything to do with either the street car company, railroad companies or insurance companies, having anything to do with these type of cases?" She answered, "no."

 We infer from the record that defendant made a motion for a mistrial in chambers during the *voir dire.* The motion was denied. He contends that the question was artful, planted the seed of prejudice by informing the jury that defendant was insured against liability and explains the excessive verdict. The question asked was not as direct as the one in *Wheeler v. Rudek,* 397 Ill. 438. It was objectionable because neither streetcar companies, railroad companies, nor insurance companies were parties. The only meaning the question taken literally could have had was in relation to the fact that the defendant was in the insurance business. This fact was subsequently given to the jury by defendant's testimony, that he was an assistant office manager for John Hancock Life Insurance Company. The question was not properly stated if it related to his employment. The contention about prejudice will be answered hereinafter.

 Plaintiff testified that twice before the accident, defendant while driving placed his hand on her knee and that once he slipped his right arm from her shoulders down her back, and she remonstrated him each time. She denied, but defendant testified, that they parked south of Soldier's Field for about 20 minutes. He said that during this time his hands "roamed," but that he was stopped; that plaintiff at no time indicated she was looking for any "necking"; that she told him politely that she wanted no "handling"; that

he sought to put his hand on her breast; that it was in the parking lot that she protested against his attempt to put his hand on her "bust or breast"; that she told him politely that she wanted no "handling"; and that she made it clear to him that there was "no soap.". We cannot say that plaintiff's attorney over emphasized this testimony by his questions, and we think the testimony was relevant to the conduct attributed to him just prior to the accident.

██ Plaintiff was 31 years old and the mother of three children at the time the accident occurred. When admitted to the hospital she was suffering from a lacerated eyelid and nose, both of which required stitches, a bruised nose, and a comminuted fracture of the right femur requiring surgery. She was rendered unconscious as the result of a head injury which was diagnosed as a brain concussion in an "admission diagnosis." She was in the hospital from August 15 to September 16, 1947, and used crutches for 6 to 8 weeks thereafter. She did not resume her employment until January 15, 1948, and she walked with a cane until September, 1948. It is not disputed that her loss of wages and expenses amounted to $3,694.50. At the time of the trial she still suffered pain in her head and leg, and will permanently carry a metal plate, held by 6 screws, in her leg. The verdict is not excessive for these injuries.

██ Defendant complains of the giving of an instruction which told the jury that if it found plaintiff should recover, it should include future suffering, if it found there was any, in determining the amount of damages. Defendant contends that the instruction was erroneous because there was a complete absence of any evidence that any of plaintiff's injuries were permanent or continuing. The testimony that plaintiff, at the time of trial, was still suffering from headaches and pain in her leg, and that she will always carry a metal plate

in her leg was sufficient basis for the instruction. There is no merit in the contention.

Defendant testified, among other things, that while driving south he saw evidence that an accident had occurred in the northbound drive; that he traveled south "200, 300 yards" while looking east; that he slowed down to "20 to 25 miles an hour"; that he was "gaping" at the accident; that "I must have accidently pulled my wheel, I don't know"; that "as soon as I hit the abutment I turned my head to see where I was going"; and that the lamp post broke right through the bumper and "pushed the wheel back toward me."

We agree with plaintiff that on either plaintiff's or defendant's theory the jury was justified in returning the verdict for the plaintiff. The verdict is not against the manifest weight of evidence. We conclude that the verdict was not the result of prejudice and for that reason think that the improper question to the juror was not prejudicial. The record does not show an unfair trial.

For the reasons given the judgment is affirmed.

*Affirmed.*

LEWE, P. J. and FEINBERG, J., concur.